UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARY SHANA THANKAM,

Plaintiff,

v.

Civil Action No. 24-3123 (JEB)

ERIC GAUDIOSI, *et al.*,

Defendants.

MEMORANDUM OPINION

Plaintiff Mary Shana Thankam is an Indian citizen residing in Dubai who seeks an immigrant visa so that she may join her U.S.-citizen husband, Romy Matthews, in the United States as a lawful permanent resident. After Matthews filed for an I-130 visa petition, Thankam's case became documentarily qualified on June 9, 2023, rendering her eligible for a consular interview — the requisite next step in the visa-application process. Plaintiff nonetheless still awaits that interview to be scheduled at the U.S. Embassy in the United Arab Emirates. Eager to close the long-distance gap in her marriage, she brought this mandamus action pursuant to 28 U.S.C. § 1361, contending that the delay violates the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*. She asks this Court to compel the Government to process her visa application.

Official-capacity Defendants Eric Gaudiosi (Deputy Chief of Mission, U.S. Embassy in the UAE), Rena Bitter (Assistant Secretary, Bureau of Consular Affairs, U.S. Department of State), and Marco Rubio (Secretary of State) now move to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiff has not identified any clear

1

duty requiring the Embassy to schedule an interview for a noncitizen and, in any event, that the delay is not unreasonable as a matter of law.  Without deciding whether the Government has a non-discretionary duty to interview eligible visa petitioners, the Court agrees that the delay in this case has not been impermissibly long and will therefore grant the Motion.

**I.  Background**

    A.  Statutory Background

The Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, permits a citizen of the United States to assist his spouse in attaining a visa and, ultimately, status as a lawful permanent resident.  See § 1151(a), (b)(2)(A)(i); 8 C.F.R. §§ 204.1(a)(1), 204.2(a).  Under U.S. Citizenship and Immigration Services requirements, "the first step [in helping] an eligible relative apply" for such relief is for a U.S. citizen to fill out Form I-130 on a relative's behalf.  See U.S. Citizenship & Immigr. Servs., I-130, Petition for Alien Relative (last visited Feb. 25, 2025), https://perma.cc/5JY9-U6WR; 8 C.F.R. § 204.1(a)(1).  USCIS will "generally approve" the form as long as a "qualifying relationship" has been established.  See U.S. Citizenship & Immigr. Servs., I-130, Petition for Alien Relative.  For certain immediate relatives, including spouses, if the I-130 form is approved, an immigrant visa is always available, as there is no statutory numerical limitation on the issuance of those visas.  See 8 U.S.C. § 1151(b)(2)(A)(i).

Upon approval, USCIS transfers the petition to the Department of State's National Visa Center (NVC) for processing.  See U.S. Dep't of State, Immigrant Visa Process (last visited Feb. 25, 2025), https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process.html.  NVC creates a case in its system for the petitioner, who is then required to fill out an online application (Form DS-260) as well as submit fees and other supporting documents.  Id.

Once the petitioner's NVC case is documentarily complete, the next step of the application process is the visa interview. Id. Applicants are told that "NVC will work with the appropriate U.S. Embassy or Consulate to schedule an [interview] for you." Id. The State Department's online timeline explains that "NVC cannot predict when [a] case will be scheduled for an interview" because each Embassy determines the dates its interviews will be held, and it notes that "NVC fills these appointments in a first-in, first-out manner." Id. After the interview, as the final step, the consular officer "must" either "issue" or "refuse" the visa. See 22 C.F.R. § 42.81(a).

B. Factual Background

Upon her marriage to Matthews in April 2022, Thankam became eligible to apply for a visa. See ECF No. 1 (Compl.), ¶ 14. In accordance with USCIS procedure, Matthews filled out an I-130 form for an immigrant spousal visa, which was approved by USCIS on April 29, 2023. See id., ¶¶ 16–18. After furnishing the necessary documentation and processing fees, Plaintiff became eligible for an interview on June 9, 2023. See id., ¶ 19.

To Plaintiff's and her husband's dismay, the matter remains frozen at this step of the process. See id., ¶¶ 19–21, 23. The interview appointment — the last remaining requirement for her visa application — remains unscheduled to this day, over a year and a half later. See id., ¶ 23; see also ECF No. 5 (MTD) at 4. Attempts by the couple to check the online status of Plaintiff's application or seek additional information from Matthews's Senator have been less than illuminating. See Compl., ¶¶ 20–21. Each source has only reinforced that the case is documentarily qualified and remains in limbo on the interview-scheduling docket. See id. As a result, Thankam brought this suit, lodging claims under the APA and Mandamus Act to compel

Defendants to adjudicate her immigrant-visa application. See id., ¶¶ 1, 27–40. The Government now moves to dismiss.

## II.  Legal Standard

Defendants' Motion invokes the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a defendant brings a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "[t]he plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91 (D.D.C. 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 174 (D.D.C. 2020)). The court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

4

**III.     Analysis**

Plaintiff's claims under the Mandamus Act and the APA both allege that Defendants have unreasonably delayed the scheduling of her consular interview. As our circuit has previously held, the standards for obtaining relief under these two statutory prongs are "essentially the same." Vietnam Veterans of Am. v. Shinseki, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). More specifically, a plaintiff can obtain mandamus only if she "demonstrate[s] (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." Am. Hosp. Ass'n v. Burwell, 812 F.3d 183, 189 (D.C. Cir. 2016). "[U]nless all [three requirements] are met, a court must dismiss the case for lack of jurisdiction." Id. Similarly, the Supreme Court has held that an APA unlawful-delay claim "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004). This requirement, although not jurisdictional under the APA, is a "necessary precondition" of an unreasonable-delay claim. See Khazaei v. Blinken, 2023 WL 6065095, at *5 (D.D.C. Sept. 18, 2023). The Court may thus assess the two counts together.

The Government, in moving to dismiss, contends that Thankam's Complaint is deficient for three reasons: (1) no law mandates the Embassy to schedule a consular interview for a specific noncitizen seeking a visa; (2) the scheduling of interviews is a matter of agency discretion "preclude[d] [from] mandamus relief"; and (3) Plaintiff's delay is reasonable as a matter of law. See MTD at 1. The Court need not wade into the legal quagmire of differing views on the first or second issue, compare Kassem v. Blinken, 2021 WL 4356052, at *5 (E.D. Cal. Sept. 24, 2021) (holding there is clear duty to schedule consular interviews and collecting cases); with Mueller v. Blinken, 682 F. Supp. 3d 528, 534–37 (E.D. Va. 2023) (holding the

5

opposite and collecting cases), because it agrees with Defendants' final contention. It will therefore assume without deciding that Plaintiff is correct that such claims are reviewable and will now evaluate the delay. See Barazandeh v. U.S. Dep't of State, 2024 WL 341166, at *6 (D.D.C. Jan. 30, 2024) (following same approach in similar case); see also Chalabi v. Hashemite Kingdom of Jordan, 543 F.3d 725, 728 (D.C. Cir. 2008) (permissible to assume statutory jurisdiction when granting motion to dismiss).

To assess whether Defendants' delay in scheduling Plaintiff's interview is unreasonable under the APA or the Mandamus Act, the Court turns to the familiar six-factor inquiry outlined in Telecommunications Research & Action Center v. FCC (TRAC), 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. at 80 (cleaned up); see Bagherian, 442 F. Supp. 3d at 96 ("The standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act.") (cleaned up); Didban, 435 F. Supp. 3d at 177 (similar).

These considerations are often grouped into four basic inquiries. "First, is there any rhyme or reason — congressionally prescribed or otherwise — for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to

6

address other priorities (factor four)?  Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?" Rahman v. Blinken, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023) (cleaned up).

The first two factors favor the Government.  Congress has not delineated a mandatory timeline for processing such applications; "[on] the contrary, Congress has given the agencies wide discretion in the area of immigration processing." Skalka v. Kelly, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017).  "Absent a congressionally supplied yardstick, caselaw guides the Court's interpretation." Whitlock v. U.S. Dep't of Homeland Sec., 2022 WL 424983, at *6 (D.D.C. Feb. 11, 2022) (quotation marks omitted).

Although there is no bright-line rule, district courts "have generally found that immigration processing delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." Sarlak v. Pompeo, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (quoting Yavari v. Pompeo, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)).  In the context of adjudicating applications of already-interviewed petitioners, many courts have "declined to find a two-year period to be unreasonable as a matter of law." Ghadami v. U.S. Dep't of Homeland Sec., 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (collecting cases); see also Skalka, 246 F. Supp. 3d at 154 (noting that two-year delay "does not typically require judicial intervention").  These particular benchmarks, moreover, all measure the period of time between an interview and a rendered decision; the totality of the visa-application timeline in these cases would obviously be longer when accounting for the time it takes to schedule the interview.  Defendants remind this Court that "the government applies 'a rule of reason' by applying such a first-in, first-out methodology" to conserve scare consular resources.

See MTD at 23 (citing L'Association des Americains Accidentels v. U.S. Dep't of State, 2022 WL 4534687, at *6 (D.D.C. Sept. 28, 2022)).

Factors three and five may favor Plaintiff slightly, but they do not turn the tide. The Complaint points to "[e]xtreme stress and anxiety" from the couple's prolonged separation and "[f]inancial hardship" caused by the delay in her U.S. entry. See Compl., ¶ 26. While the Court acknowledges and sympathizes with these difficulties, they do not significantly factor into the TRAC analysis. See Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 345 (D.C. Cir. 2023) ("The financial harms [plaintiff] alleges, along with the uncertainty that results any time an individual must continue to wait to secure a benefit, are insufficient to tip TRAC factors three and five in his favor.").

The fourth TRAC factor, which often carries the greatest weight, see Milligan v. Pompeo, 502 F. Supp. 3d 302, 319 (D.D.C. 2020), favors Defendants. It analyzes whether it would be just to prioritize Plaintiff's visa application "at the expense of other similarly situated applicants." Da Costa, 80 F.4th at 344 (citation omitted). The D.C. Circuit has found judicial intervention unwarranted "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up). This Court will heed that warning. As Plaintiff asks the Court to process her visa application within fifteen calendar days of an order, see Compl., ¶ 41, others in line would be bumped. Her request therefore necessarily would entail a "judicial reordering of agency priorities." Bagherian, 442 F. Supp. 3d at 96 (cleaned up).

The sixth and final TRAC factor does not change the calculus. A court need not find any impropriety in an agency's inaction in order to deem a delay unreasonable, so Plaintiff's "lack of

8

those allegations does not count against [her] here." Ghadami, 2020 WL 1308376, at *9. That said, Plaintiff's unhappiness that Defendants have not been forthcoming with an interview does not constitute bad faith on the Government's part. See Chowdhury v. Blinken, 2022 WL 136795, at *4 (D.D.C. Jan 14, 2022).

Weighing all six TRAC factors, the Court finds that Plaintiff has not carried her burden of establishing unreasonable delay, which means that both her APA and mandamus claims come up short.

## IV.     Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: February 25, 2025